# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| HOWLINK GLOBAL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00040-JRG-RSP |
| | § | (Lead Case) |
| AT&T, INC., et al. | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| HOWLINK GLOBAL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00042-JRG-RSP |
| | § | (Member Case) |
| VERIZON COMMUNICATIONS, INC., et al., | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| | § | |
| | § | |

**DECLARATION OF DR. MAHDI ESLAMINMEHER**

## Introduction

1.      I have been retained by counsel for the Plaintiff Howlink Global LLC

("Howlink"), to provide technical analysis and opinions in this case.  This declaration is

submitted in connection with Howlink's opening claim construction brief.

2.      I have reviewed and agree with each of Howlink's claim construction positions

for the three asserted patents.  For this declaration I have been asked by counsel to specifically

address the following five claim terms and phrases from the asserted '279 patent:

- "formed by a concatenation of…" (claims 1, 7, 13, 19, 25)
- "a cell identifier for obtaining cell identification information…" (claim 13)
- "a generator for generating a plurality of unique cell identification code groups" (claim 19)
- "an applier for allocating the plurality of unique cell identification code groups" (claim 19)
- "first carrier group" / "second carrier group" (claims 3, 4, 15, 16, 21, 22)

3.      As explained below, it is my opinion that these terms and phrases are used in the

'279 claims according to their ordinary meaning and, contrary to Defendants' assertions, none of

these terms or phrases is indefinite.  I understand that I may be asked to supplement this

declaration in connection with Howlink's reply claim construction brief to further address the

above or additional terms in dispute, given that I have not yet seen any expert testimony or

opinions from Defendants and therefore cannot at this time provide a direct rebuttal.

## Qualifications

4.      I have a Master of Science in Computer Science from Linköping University,

Sweden, and a Doctor of Philosophy in Computer Science from UCLA.  I have received an

MBA from the London School of Economics and Political Science.  I have also received

management certificates from Harvard Business School.  I have lectured at UCLA and California

State Polytechnic.  I was a postdoctoral scholar at UCLA and SAP Labs, where I conducted

research into complex and large-scale software analysis, testing, and formal verification of embedded software and applications.  In addition, I have given numerous presentations concerning Software/Hardware Analysis and won the Best Paper award from IEEE International Symposium on Software Reliability Engineering (ISSRE) software conference sponsored and hosted by the National Institute of Standards and Technology (NIST).  Since September 2022, I have held the position of Vice President of Technology Due Diligence at Quandary Peak Research in Los Angeles, California.

5.      I also worked as a software and telecommunication engineer for over twenty years.  I have many years of experience designing, developing, analyzing, and testing 2G/3G/4G/LTE/5G solutions for many companies, including Ericsson.  I served as the Chief Technology and Operating Officer for Clarity Global in Sydney, Australia, where I designed and developed enterprise Operation Support Systems (OSS) and Business Support Systems (BSS) as holistic network management solutions for fixed and mobile telecommunication operators.

6.      My current C.V. is attached as exhibit 1.  My prior testimony and litigation consulting engagements are also listed in exhibit 1, starting at the bottom of page three.  My consulting work in this matter is being billed on an hourly basis, at $575 per hour.  My compensation is not tied in any way to the outcome of this case or any proceedings in this case; I am solely being compensated for my time.

## Materials considered

7.      I have reviewed each of the three patents asserted in this case (the '279, '415, and '576 patents) and their prosecution histories.  I have also reviewed the parties' claim construction disclosures made under the Court's local patent rules.

## Legal standards

8.      My understanding of the applicable legal standards is summarized below.

2

9.      I understand that a person of ordinary skill in the art is a hypothetical person who is presumed to have known the relevant art as of the effective filing date.  I understand that the factors that may be considered in determining the level of ordinary skill in the art may include: (a) type of problems encountered in the art; (b) prior art solutions to those problems; (c) rapidity with which innovations are made; (d) sophistication of the technology; and (e) educational level of active workers in the field.

10.     I understand that claim construction is the process by which a court determines the scope and meaning of the language used in the claims of a patent.  I further understand that claim language is presumed to have the ordinary and customary meaning that language would have had to a person of ordinary skill in the art as of the effective date of the patent, after reading the entire patent and prosecution history.

11.     I further understand that it in some circumstances the patent specification or prosecution history may contain a special definition given to a claim term by the patentee that differs from its ordinary meaning and that in those circumstances the patentee's definition usually controls.

12.     I understand that the prosecution history of a patent can inform the meaning of some claim language and must be taken into account in construing the claims.

13.     I understand that, in some cases, the court may consider extrinsic evidence, such as technical dictionaries, treatises, and expert opinions, to understand the underlying technology and the way in which claim terms would be understood by a person of ordinary skill in the art at the relevant time.  However, I also understand that extrinsic evidence should not be used to vary, contradict, expand, or limit the claim language from how it is defined in the specification or prosecution history.

14.     I understand that certain claims may be drafted in "means-plus-function" format under §112, ¶ 6 of the Patent Act.  A claim element that uses the word "means" invokes a rebuttable presumption that the element is a means-plus-function term.  In contrast, a claim element that does *not* use "means" will trigger the rebuttable presumption that the element is *not* a means-plus-function term.  I understand that the standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.  If a claim term lacks the word "means," the presumption can be overcome and § 112, ¶ 6 will apply if it is demonstrated that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.  I understand that "structure," in the context of determining whether a claim element is a means-plus-function element, can include not just hardware structure but also software.  I understand that if a claim element is in fact determined to be a "means-plus-function" element, then the function of that element must be determined and the corresponding structure in the specification (and equivalents) must also be identified.

15.     I understand that the following legal standard applies to the invalidity defense of indefiniteness.  If a claim does not, when viewed in light of the intrinsic record, reasonably inform or apprise one of ordinary skill in the art of its scope, then the claim is considered indefinite and therefore invalid.  If a patent that recites a means-plus-function element does not sufficiently disclose to one skilled in the art a corresponding structure for performing the claimed function, then that element may be rendered indefinite.

### Opinions

#### The '279 patent overview

16.     U.S. Patent No. 8,630,279 is entitled "Method for Generating Downlink Signal, and Method for Searching Cell."  The patent was issued to a group of researchers at Electronics

and Telecommunications Research Institute (ETRI) in South Korea. I understand that the patent has an effective filing date of December 28, 2006, and that Howlink contends that the claims were conceived no later than January 2006.

17.    The '279 patent claims methods and devices that relate to how a "mobile station," such as a cellphone or smartphone, identifies and synchronizes with the base stations in a cellular network so that the phone can be authenticated by the base station and begin to receive service. Certain claims focus on the generation by the cell tower of a downlink signal that encodes the necessary cell tower identification information and synchronization signals. Other claims focus on the mobile station and its receipt and processing of those downlink signals. I understand that Howlink contends that the manner in which Defendants AT&T and Verizon generate downlink signals in their LTE and LTE-supported networks infringe certain claims of the '279 patent; based on my review to date of the evidence in this case (which includes materials from Defendants and their vendors, and the LTE standards), I agree. However, my infringement opinions are beyond the scope of this declaration.

Level of ordinary skill

18.    In my opinion, a person of ordinary skill in the art as of the priority date of the '279 patent would have at least a Bachelor's degree in electrical engineering, computer science, or a related field, along with two or more years of work experience in wireless communications networks and devices including synchronization acquisition and signals. A higher degree of related education can be a substitute for work experience and vice versa.

**"formed by a concatenation of…"**

19.    Independent claims 1, 7, 13, 19, and 25 of the '279 patent each include a pair of "formed by a concatenation of…" phrases. For example, these phrases appear in claim 1 as follows:

A method for generating a downlink signal, comprising:

generating a plurality of unique cell identification code groups; and

allocating the plurality of unique cell identification code groups to a plurality of synchronization durations within a downlink frame, respectively,

wherein the plurality of unique cell identification code groups comprise a first code group which is **formed by a concatenation of a first cell identification code and a second cell identification code**,

wherein the plurality of unique cell identification code groups further comprise a second code group which is **formed by a concatenation of the second cell identification code and the first cell identification code**,

wherein the first code group is different from the second code group, and wherein the concatenation of the first cell identification code and the second cell identification code represents cell identification information.

'279 claim 1 (emphasis added).

20.    I understand the parties' positions to be as follows:

| Howlink | Defendants |
| --- | --- |
| formed by an arrangement that combines a first cell identification code and a second cell identification code<br><br>formed by an arrangement that combines the second cell identification code and the first cell identification code | No construction necessary; plain and ordinary meaning. |

21.    In my opinion Howlink's proposed construction is correct and does in fact represent the plain and ordinary meaning of these phrases.  The term "concatenation" would be understood by one skilled in the art to refer to taking two or more different items of information (in this case, cell identification codes) and combining them in an arrangement.  This interpretation is supported by the prosecution history for the '279 patent, in which the inventors explicitly used "concatenation" and "combination" interchangeably:

"In other words, Jamal merely discloses the combined code $c_{s/lci}$ where framing synchronization information and long code indicating (lci) information are

combined but does not teach **the concatenation of two cell identification codes, i.e., the combination of two cell identification codes**.

April 17, 2012 Response to Office Action at 9 (emphasis added).

22.    In addition, although the specification does not use the words "concatenate" or "combine," it does teach various embodiments in which two cell identification code groups are combined in a particular arrangement to form "unique cell identification code groups."  For example, Equation 5 in the specification shows four unique cell identification code groups that are created by combining codes "m," "k," and "l" into particular arrangements:

> According to a method for generating a downlink signal of the third exemplary embodiment of the present invention, the downlink frame is generated such that the unique cell identification code group and the frame synchronization identification sequence is arranged as in the following Equation 5.

> $$[((m,k),0), ((m,l),0), ((l,m),0), ((k,m),0)] \qquad \textit{(Equation 5)}$$

> In Equation 5, **(m,k), (m,l), (l,m), and (k,m) denote unique cell identification code groups** arranged in four synchronization durations according to the third exemplary embodiment of the present invention, and 0 denotes an index number of the frame synchronization identification sequence applied to the four synchronization durations.

'279 col. 9:20-33 (emphasis added).  In this example, the first code group is formed by combining codes "m" and "k" and arranging them such that the m precedes the k, whereas the fourth code group is formed by again combining codes "m" and "k" but this time arranging them such that the k precedes the m.  Other embodiments are also illustrative.  *See e.g.*, Figs 3, 10, 11; equations 3-4; col. 7:38-50; 8:26-46.

23.    I have not seen any evidence in the intrinsic record or elsewhere that would support any contention by Defendants that Howlink's proposed construction is incorrect or does not reflect the plain and ordinary meaning of the "concatenation" phrases.  In the event that Defendants disclose any such evidence or otherwise specify the basis for their contentions

concerning these claim phrases, such as expert testimony, I expect to supplement this declaration in response.

**"a cell identifier…"**

24.     Claim 13 calls for "An apparatus for searching a cell, comprising…a cell identifier for obtaining cell identification information based on at least one of the plurality of unique cell identification code groups."  '279 claim 13, col. 19:16-21.  The parties contend:

25.     I understand the parties' positions to be as follows:

| Howlink | Defendants |
|---|---|
| Not governed by § 112, ¶ 6; no construction necessary | Governed by § 112, ¶ 6, <br> • Function:  obtaining cell identification information <br> • Structure:  indefinite |

26.     In my opinion, Defendants' position is incorrect.  The claimed phrase does not use the term "means" and instead identifies a well-known structure within a mobile station—the portion of the user device that obtains the cell identification information that is needed for the device to identify, authenticate, and receive service from cell towers in the cellular network.  This is well-known structure found in every mobile station and is not unique in concept or phrasing to the '279 patent, which does not purport to have invented "cell identifiers" but instead claims novel methods of creating the signals that the cell identifiers must obtain and decode.  In addition, the specification clearly identifies the cell identifier as part of the structure of the mobile station.  *See, e.g.*, Figure 12 (item 260); col. 10:42-46 ("As shown in FIG. 12, the mobile station 200 includes a downlink signal receiver 210….and a cell identifier 260"); col. 13:10-14 ("The cell identifier 260 extracts a unique cell identification code group…and identifies a cell by correlating it with a plurality of unique cell identification codes").

27.     I have not seen any evidence in the intrinsic record or elsewhere that would support Defendants' contention that the "cell identifier" phrase should be considered a "means-

plus-function" phrase or that there is insufficient structure for the cell identifier in the specification (to the contrary, there is).  If Defendants submit evidence or expert testimony on this claimed phrase, I expect to supplement this declaration in response.

### "a generator…" and "an applier…"

28.    Claim 19 is shown in part below:

19.    An apparatus for generating a downlink frame in a wireless communication system, the apparatus comprising:

> a generator for generating a plurality of unique cell identification code groups; and
>
> an applier for allocating the plurality of unique cell identification code groups to a plurality of synchronization durations within a downlink frame, respectively,
>
> ***

'279 claim 19 (emphasis added).

29.    I understand the parties' positions to be as follows:

| Howlink | Defendants |
|---|---|
| *"a generator for…"*:<br><br>Not governed by § 112, ¶ 6; no construction necessary | *"a generator for…"*:  governed by § 112, ¶ 6,<br>• Function:  generating a plurality of unique cell identification code groups;<br>• Structure:  indefinite |
| *"an applier for…"*:<br><br>Not governed by § 112, ¶ 6; no construction necessary | *"an applier for…"*: governed by § 112, ¶ 6,<br>• Function:  allocating the plurality of unique cell identification code groups to a plurality of synchronization durations within a downlink frame, respectively;<br>• Structure:  indefinite |

30.    In my opinion, Defendants' positions are incorrect.  The claimed phrases do not use the term "means" and instead identify well-known structures within a cellular base station— the portions of the base stations that generate cell identification code groups and then apply those code groups to portions of the downlink frames transmitted by the base station.  These are

common structures and functions known to those of ordinary skill in the art to reside in base stations. The novelty is not in the mere acts of "generating" or "applying," acts performed by all base stations in some form or fashion, but in the structure and content of what is generated and applied to the downlink frames. In addition, the specification clearly identifies the generator and applier as part of the structure of the base station. *See, e.g.*, col. 6:64-67 ("As shown in FIG. 6, an apparatus for generating a downlink signal 100 includes <u>a downlink frame generator 110,…a frame synchronization applier 130</u>, and a transmitter 140" (emphasis added), Figure 6; col. 7:4-5, Figures 1-3; col. 7:21-25.

31.    I have not seen any evidence in the intrinsic record or elsewhere that would support Defendants' contention that the "generator" or "applier" phrases should be considered "means-plus-function" phrases or that there is insufficient structure for these terms in the specification (to the contrary, there is). If Defendants submit evidence or expert testimony on these claimed phrases, I expect to supplement this declaration in response.

### "first carrier group" / "second carrier group"

32.    Several dependent claims (claims 3, 4, 15, 16, 21, 22) recite a "first carrier group" and a "second carrier group." For example, claim 3 calls for:

> 3.    The method of claim 2, wherein elements of the first cell identification code in the first OFDM symbol duration is allocated in a <u>first carrier group</u> and elements of the second cell identification code in the first OFDM symbol duration is allocated in a <u>second carrier group</u>.

'279 claim 3 (emphasis added).

33.    I understand the parties' positions are as follows:

| Howlink | Defendants |
|---|---|
| first group of radio frequencies<br><br>second group of radio frequencies | Indefinite |

34.     In my opinion, Howlink's proposal is correct and represents the ordinary meaning of these terms, as would be understood by a person of ordinary skill in the art: "group[s] of radio frequencies" that are used to transmit signals from the base station to the mobile station.  The term "carrier" is commonly used in this manner in the field of telecommunications and other wireless data transmission, and is similarly used in this manner in the specification.  *See, e.g.,* Col. 6:39-47 ("a plurality of unique cell identification codes . . . may be arranged in a frequency domain of the common synchronization channel as shown in FIG. 3"); col. 1:11 (defining OFDM, which appears in claim 3 and the other relevant claims, as "orthogonal frequency division multiplexing"); col. 5:29-31 ("In FIG. 1, the horizontal axis is a time axis, and the vertical axis is a frequency axis or a subcarrier axis" (emphasis added)); col. 15:28-30 ("When an available band of the synchronization channel is 1.25 MHz the number of all available subcarriers is approximately 38."); Figure 3 (showing a first cell identification code $C^{(p)}$ that is allocated to a first group of radio frequencies, and a second cell identification code $C^{(q)}$ that is allocated to second group of radio frequencies).

35.     In sum, the claimed "carrier group[s]" would, in my view, reasonably inform one of ordinary skill in the art of the meaning and scope of those terms and the claims containing them, and there is no basis for finding these claims indefinite.

36.     If Defendants submit expert testimony or other support for their indefiniteness contention, I expect to supplement this declaration in response.

## Conclusion

37.     For the foregoing reasons, it is my opinion that the above-listed claim terms and phrases should be construed or otherwise treated as proposed by Howlink, and that Defendants' positions are incorrect.  I understand that the parties have stipulated to a briefing schedule, approved by the Court, that permits further expert declarations to be submitted.  I expect that, in

response to Defendants' claim construction brief or expert testimony, I will provide a reply declaration that further addresses the above terms and potentially addresses additional terms discussed by Defendants' expert.

***

I declare, under penalty of perjury under the laws of the United States, that the foregoing statements represent my true and correct opinions as of this time on the subject matter described.

Dated:  January 13, 2023

_____

Mahdi Eslamimehr, Ph.D.

# MAHDI ESLAMIMEHR

**Vice President of Technical Due Diligence**
Quandary Peak Research
205 S Broadway, Ste 300
Los Angeles, CA 90012
Phone: 323.545.0160
Email: mahdi@quandarypeak.com

## EDUCATION

- **Ph.D. in Computer Science**, *University of California, Los Angeles*          **Feb 2014**
- **M.S. in Computer Science**, *Linköping University, Linköping, Sweden*          **Sep 2008**

## DEGREES & CERTIFICATIONS

- **Business Management**, *Harvard Business School*, Boston, MA          **Apr 2022**
- **Leadership Principles**, *Harvard Business School*, Boston, MA          **Dec 2022**
- **Master of Business Administration (MBA)**, *London School of Economics and Political Science*, London, UK          **Sep 2019**
- **Digital Maturity and Transformation Practitioner, TM Forum**          **Sep 2018**

## EMPLOYMENT

- **Vice President of Technical Due Diligence**          **Sep 2021 – Present**
  - Leading the technical due diligence department at Quandary Peak Research. My team provides technology and IP consulting to VCs, Fortune 100, and private equity firms in matters of M&A transactions, VC startup investments, acqui-hires and IP matters.

- **Harvard Business Review Advisory Council Member**          **Jul 2022 – Present**

- **Director of Software Litigations**          **Jul 2021 – Sep 2022**
  *Quandary Peak Research*, Los Angeles, CA
  - Providing software analysis and expert witness testimony in software-related litigation, including patent infringement, trade secret disputes, software malfunctions, breach-of-contract suits, and other matters.
  - Performing forensic investigations of computer systems, including examining digital data, recovering lost and corrupted files, auditing digital records and logs, and analyzing document metadata.
  - Investigating software failures to determine the root cause and help clients understand whether and how such failure could have been avoided.
  - Applying advanced analytic techniques based on calibrated parametric models for valuation of software products and estimation of software development costs.

- **Chief Technology & Operating Officer**          **Apr 2018 – Dec 2020**
  *Clarity Global, Sydney, Australia*

  - Applying creative initiatives to convert board strategies into actionable/measurable KPIs in doubling the company size within two years and increasing overall productivity by 20%.
  - Drafting the company's operational strategies and improving agility.
  - Overseeing regional HQs' (EMEA, APAC) performance and helping with annual operation planning with 10+ global accounts/projects and 150 staff for more than 500 M subscribers of fix (FTTx) and mobile (2G/3G/4G, Data/IP, Transmission, Voice, IMS, Circuit Switch, Broadband) networks.
  - Development and execution of technical roadmap concerning the company's vision and goals.

- Creating three R&D centers in Australia, Bulgaria, and Sri Lanka to escalate innovation and product development.


- **Chief Technology Officer**                                                         Jan 2017 – Mar 2018
  *Clarity Global, Sydney, Australia*

  - Developing an Operational and Business Support Systems (OSS/BSS). Responsible for:
    - Designing and developing intelligent, zer0-touch, autonomous OSS of the future across SDN, NFV, vRAN with OPEN-API for empowering 5G networks (CRM, Business Assurance, Billing, Call/Contact Center)
    - Transforming from the legacy monolith and obsolete frameworks to Microservice and Kubernetes Architecture, Angular Front End, Cloud Solutions, AI/ML, and Big Data Analytics.
    - Expanding product portfolio from OSS to BOSS (BSS/OSS) full-stack with full-service orchestration from BSS layer to OSS improving business assurance.
    - Developing product roadmaps and coaching presales and technical sales teams for demos and marketing materials based on TMForum Standards, e.g., SID, eTOM, and TAM.


- **Visiting Research Fellow**                                                        Nov 2016 – Dec 2017
  *Human Advancement Research Community (HARC), Y Combinator Research*, Los Angeles, CA
  - Worked closely with MIT Media Lab, SAP Labs, University of Washington, and University of California Los Angeles to build products and frameworks using innovative and emerging technologies in the context of Computer Simulation, Video Games, Social Systems, Programing Languages, and Compilers.

- **Expert Witness and Consultant**                                                    Aug 2015 – Jul 2016
  *Quandary Peak Research*, Los Angeles, CA
  - Providing software analysis and expert witness testimony in software-related litigation, including patent infringement, software malfunctions, breach-of-contract suits, and other matters.
  - Applying advanced analytic techniques based on calibrated parametric models for valuation of software products and estimation of software development costs.
  - Documenting software systems architecture to identify structural similarities and differences among competing products and services and deducing the origin of software designs and code.

- **Visiting Faculty**                                                                 Jun 2014 – Jun 2015
  *Computer Science Department, University of California*, Los Angeles, CA
  - Conducting software research in the Compiler Lab in testing and formal verification of concurrent, parallel, and web-based programs.

- **Postdoctoral Scholar**                                                             Jul 2014 – Jul 2015
  *SAP Labs / Viewpoints Research Institute*
  - Developing a new testing environment for JavaScript programs and web applications.
  - Implementing a web-based framework to improve human-computer interaction using natural language processing techniques.
  - Implementing an automatic behavior-driven testing technique for checking the correctness of web applications with natural language.
  - Implemented a new constraint-based declarative programming language for rapid web-based application prototyping.
  - Implementing a syntactically and semantically correct program generation tool with Parsing Expression Grammars for JavaScript applications.

- **Adjunct Faculty**                                                                  Sep 2013 – Jun 2014
  *California State Polytechnic,* Pomona
  - Teaching graduate and undergraduate courses (Software Engineering and Object-Oriented Design Patterns) in the Computer Science Department.

- Teaching an undergraduate course (Industrial Computation) in the Industrial and Manufacturing Engineering Department.

- **Graduate Fellow**                                                                                                **Sep 2008 – Feb 2014**
  *Computer Science Department, University of California*, Los Angeles, CA
  - Designed and implemented VICE, a testing tool for memory management and timing analysis of event-driven embedded systems.
  - Designing and implementing several testing tools to detect concurrency bugs in large-scale Java programs, including:
    - Racagedon: A tool to detect rare data races in multithreaded Java programs.
    - Sherlock: A tool to detect rare deadlocks in multithreaded Java programs.
    - AtomChase: A tool to detect rare atomicity violations in multithreaded Java programs.

- **Graduate Research Intern**                                                                              **Jun 2013 – Sep 2013**
  *CNRS, VERIMAG*, Grenoble, France.
  - Designing and implementing a tool to estimate Worst-Case Execution Time for microcontrollers.
  - Implementing a task scheduling system for processors with no timing anomaly.

- **Graduate Research Intern**                                                                              **Jun 2010 – Sep 2010**
  *Samsung Electronics R&D Center,* San Jose.
  - Designing and implementing a scalable topology language for many-core processors, named Samsung PArallel Real-Time Architecture (SPARTA). SPARTA is a set of tools and a run-time framework that enables superior software performance through dynamic (adaptive) parallelization and system-wide coordination of processing, memory, and I/O resources.
  - Designing and implementing Components Configuration Language (CCL) as a subset of SPARTA. SPARTA's CCL is a domain-specific programming language used to rapidly generate source code for a component-based application.
  - Analyzing the performance of distributed tasks on many-core architectures for Tilera processors.

- **Software Engineer**                                                                                          **Dec 2007 – May 2008**
  *Ericsson AB R&D,* Stockholm, Sweden.
  - Designing and implementing a model-based testing framework for Ericsson's applications.
  - Analyzing accuracy and performance of telecommunication testing tools.

- **Graduate Research Intern**                                                                              **May 2007 – Jul 2007**
  *Conformiq Qtronic,* Helsinki, Finland.
  - Surveying state-of-art model-based testing tools.
  - Developing prototype applications for Conformiq tools.

- **Software Intern**                                                                                              **Jun 2004 – Sep 2004**
  *United Nations World Food Program*, Tehran, Iran.
  - Designing and implemented an internal communication database.
  - Migrating legacy databases to SQL.

LITIGATION CONSULTING[*]

- **CommScope, Inc. v. <u>Rosenberg Technology Co. Ltd.</u>**[*]                          **Nov 2022 -Present**
  - Jurisdiction:        U.S. District Court for the District of New Jersey
  - Counsel:              King & Wood Mallesons LLP
  - Nature of Suit:    Trade Secrets

---

[*] Retained as a testifying expert.

- **Content Engine, LLC., v. <u>Rumble USA, Inc.</u>\***      **Nov 2022 -Present**
  - Jurisdiction:      U.S. District Court for Southern District of New York
  - Counsel:      Burk, Williams, Sorensen LLP
  - Nature of Suit:      Patent

- **<u>CG3 Media</u>, LLC., v. Belleau Technologies, LLC.**      **Sep 2022 -Present**
  - Jurisdiction:      U.S. District Court for Middle District of Florida
  - Counsel:      Radulescu LLP
  - Nature of Suit:      Patent

- **<u>HowLink Global LLC</u>\*, v. Verizon, Corp.; ATT Corp.**      **Jul 2022 -Present**
  - Jurisdiction:      U.S. District Court for Easter District of Texas
  - Counsel:      LTL Attorneys
  - Nature of Suit:      Patent

- **<u>OpenText Corporation</u>\* v. Softil, Inc.**      **Jul 2022 -Present**
  - Jurisdiction:      American Arbitration Association
  - Counsel:      Vedder Price
  - Nature of Suit:      Breach of Contract

- **ClubReady LLC v. <u>Xponential Fitness et al</u>\*.**      **Jun 2022 -Present**
  - Jurisdiction:      American Arbitration Association
  - Counsel:      Willkie Farr & Gallagher LLP
  - Nature of Suit:      Breach of Contract

- **<u>1-800 Hansons LLC</u>\*, v. Rightpoint Consulting LLC,**      **May 2022 -Sep 2022**
  - Jurisdiction:      American Arbitration Association
  - Counsel:      Honigman LLP
  - Nature of Suit:      Breach of Contract

- **<u>Broadband iTV, Inc.</u> v. Comcast Corporation; Comcast Cable Communications, LLC; NBCUniversal Media, LLC; Charter Communications, Inc.; Charter Communications Holding Company, LLC; Spectrum Management Holding Company, LLC; Altice USA, Inc.; CSC Holdings, LLC; Cablevision Systems Corp.**      **Apr 2022 -Sep 2022**
  - Jurisdiction:      International Trade Commission
  - Counsel:      Feinberg Day Kramer Alberti Lim Tonkovich & Belloli LLP
  - Nature of Suit:      Patent

- **<u>Video Labs, Inc.</u> v. Dell Technologies Inc. and Dell Inc.**      **Apr 2022 – Present**
  - Jurisdiction:      U.S. District Court for Western District of Texas
  - Counsel:      Feinberg Day Kramer Alberti Lim Tonkovich & Belloli LLP
  - Nature of Suit:      Patent

- **<u>Mbyte Tech Hong Kong Limited</u> v. AdShoppers, Inc. d/b/a Minty.com**      **Mar 2022 – Apr 2022**
  - Jurisdiction:      U.S. District Court for Western District of North Carolina
  - Counsel:      Bayramoglu Law
  - Nature of Suit:      Trademark

- **<u>M. Lahatte and The Lahatte Company</u>\* v. S. Smith, and TopCoat Holdings, LLC**      **Feb 2022 – Mar 2021**
  - Jurisdiction:      American Arbitration Association
  - Counsel:      Bishop & Mills
  - Nature of Suit:      Trademark

- **JK Soft\*, Inc. v. Innoas, Inc.**                                          **Feb 2022 – Present**
  - Jurisdiction:      U.S. District Court for the District of New Jersey
  - Counsel:           Choi Law Group
  - Nature of Suit:    Trade Secret and Copyright


- **Ventive LLC\*, v. Title Pipe, Inc.**                                        **Nov 2021 – Feb 2021**
  - Jurisdiction:      American Arbitration Association
  - Counsel:           Mooney Wieland
  - Nature of Suit:    Breach of Contract

- **Chetu\*, Inc. v. Bodies Done Right, LLC d/b/a/ Health 360**                 **Oct 2021 – Dec 2021**
  - Jurisdiction:      Circuit Court, County of Broward, State of Florida
  - Counsel:           Lampert Law Firm
  - Nature of Suit:    Breach of Contract

- **Express Mobile, Inc. v. Google LLC**                                        **Aug 2021 – Present**
  - Jurisdiction:      U.S. District Court for the Eastern District of Texas
  - Counsel:           Feinberg Day Kramer Alberti Lim Tonkovich & Belloli LLP
  - Nature of Suit:    Patent Infringement

- **Infoshare Systems\*, Inc. v. La Telugu LLC**                                **Aug 2021 – Jun 2022**
  - Jurisdiction:      Superior Court of California, County of Orange
  - Counsel:           Curat Lex, Inc.
  - Nature of Suit:    Breach of Contract

- **Burhaan Saleh v. Nike, Inc. et al**                                         **Aug 2021 – Dec 2021**
  - Jurisdiction:      US District Court for the Central District of California
  - Counsel:           Bursor and Fisher PA
  - Nature of Suit:    Class Action

- **Bridge IT Consulting, Inc. v. Join Digital, Inc.**                          **Aug 2021 – Aug 2021**
  - Jurisdiction:      Superior Court of California, County of Santa Clara
  - Counsel:           Finestone Hayes LLP
  - Nature of Suit:    Breach of Contract

- **Centripetal Networks, Inc. v. Palo Alto Networks, Inc.**                    **Jul 2021 – Present**
  - Jurisdiction:      U.S. District Court for the Eastern District of Virginia
  - Counsel:           Kramer Levin Naftalis & Frankel LLP
  - Nature of Suit:    Patent

- Trevera Solutions, Inc. v. **Semtech Corporation**                           **Feb 2016 – Jul 2016**
  - Jurisdiction:      Superior Court of California, County of Orange
  - Counsel:           Tredway, Lumsdaine & Doyle, LLP
  - Nature of Suit:    Trade Secret

- **Global Equity Management (SA) PTY. Ltd. v. alibaba.com, INC.,Alibaba group holding Ltd.**   **Jan 2016 – Jul 2016**
  - Jurisdiction:      U.S. District Court for the Eastern District of Texas
  - Counsel:           Ramey & Schwaller, LLP
  - Nature of Suit:    Patent

- **Internap Corporation v. Noction, Inc.**                                    **Dec 2015 – Mar 2016**
  - Jurisdiction:      U.S. District Court for the Northern District of Georgia
  - Counsel:           Warner Norcross & Judd LLP
  - Nature of Suit:    Patent

- **Ericsson Inc. v. TCL Communication Technology Holdings, Ltd.**             **Dec 2015 – Jul 2016**
  - Jurisdiction:      U.S. District Court for the Central District of California
  - Counsel:           Sheppard Mullin Richter & Hampton LLP
  - Nature of Suit:    Patent

- **Fitbit Inc. v. Jawbone Inc.**                                             **Oct 2015 – Jul 2016**
  - Jurisdiction:      U.S. District Court for the Northern District of California
  - Counsel:           Gibson, Dunn & Crutcher LLP
  - Nature of Suit:    Patent

- **T-Mobile USA, Inc.  v. Huawei Device USA, Inc.**                           **Oct 2015 – Jul 2016**
  - Jurisdiction:      U.S. District Court for the Western District of Washington
  - Counsel:           Hueston Hennigan LLP
  - Nature of Suit:    Trade Secrets

- **Tait Environmental Services Inc. v. Pro Technology Automation, Inc.**      **Oct 2015 – Mar 2016**
  - Jurisdiction:      Superior Court of California, County of Orange
  - Counsel:           Pettibone & Associates
  - Nature of Suit:    Trade Secrets

- **Nicole, Inc. v. B.L.K. International, Inc.**                               **Sep 2015 – Oct 2015**
  - Jurisdiction:      U.S. District Court for the Central District of California
  - Counsel:           Greenberg & Bass LLP
  - Nature of Suit:    Copyright

- **Bryndon Fisher v. The United States of America**                          **Jul 2015 – Jul 2016**
  - Jurisdiction:      Pre-Litigation
  - Counsel:           Schubert Jonckheer & Kolbe LLP
  - Nature of Suit:    Class Action

- **Chipp'd Ltd. v. Crush & Lovely LLC**                                      **Jul 2015 – Aug 2015**
  - Jurisdiction:      American Arbitration Association
  - Counsel:           White and Williams LLP
  - Nature of Suit:    Breach of Contract

- **Seymore Levine v. The Boeing Company**                                    **Jul 2015 – Jul 2016**
  - Jurisdiction:      U.S. District Court for the Central District of California
  - Counsel:           Quinn Emanuel Urquhart & Sullivan LLP
  - Nature of Suit:    Patent

TECHNICAL VETTING/DUE DILIGENCE CONSULTING (Partial List)

- **EnoviQ Technology – Technical Vetting**                                   **Oct 2022 – Oct 2022**
  - Technology: SaaS, AI/ML, Insurance

- **Foundation Partners Group - Startup M&A**                                    **Oct 2022 – Oct 2022**
  - Technology: SaaS, B2B/B2C, Funeral Services

- **The Computing Technology Industry Association (CompTIA) - Startup M&A**       **Jul 2022 – Sep 2022**
  - Technology: SaaS, B2B/B2C, E-Learning Platform

- **Hello Hive – Technical Vetting**                                             **Jul 2022 – Sep 2022**
  - Technology: SaaS, CRM

- **Parkland Health/Parkland Center for Clinical Innovation – Startup M&A**      **May 2022 – Sep 2022**
  - Technology: AI/ML/NLP, EHR

- **Lionard PTE, Ltd – Startup M&A**                                             **Mar 2022 – Mar 2022**
  - Technology: Blockchain, Dynamic Document Management Systems

- **Tenex Capital Management – Startup M&A**                                     **Mar 2022 – Mar 2022**
  - Technology: B2B/B2C, Digital Health

- **Setana Energy Ltd – Startup Investment**                                     **Nov 2021 – Nov 2021**
  - Technology: Big Data Analytics, AI/ML, FMCG

- **Schneider Electric – Startup Investment**                                    **Dec 2021 – Dec 2021**
  - Technology: Electric Vehicles, SaaS

- **Saudi Research and Media Group (SRMG) – Startup Investment**                 **Nov 2021 – Nov 2021**
  - Technology: AI/ML, NLP, E-Commerce, and Media Content Management

- **Schneider Electric – Startup Investment**                                    **Oct 2021 – Oct 2021**
  - Technology: Renewable Energy, SaaS

- **Tenex Capital Management – Startup M&A**                                      **Sep 2022 – Sep 2022**
  - Technology: Lead Generation, AI/ML, Insurance, Real Estate


JOURNAL & MAGAZINE ARTICLES

- M. Eslamimehr, M. Lesani, G. Edwards, **Efficient detection, and validation of atomicity violations in concurrent programs**. *Journal of Systems and Software, Vol.137, P 618-635*, 2018.


CONFERENCE PAPERS

- O. Freiberg, J. Palsberg, M. Eslamimehr, **Retargetable Communication for Distributed Programs**. *In Proceedings of 12th International ACM SIGSOFT Conference on the Quality of Software Architectures (QoSA'16)*, 2016.
- M. Eslamimehr, G. Edwards**, End-to-End Cross-Language Test Case Generation for Web Applications**. *In Proceedings of the 9th ACM SIGMETRICS International Conference on Performance Evaluation Methodologies and Tools (ValueTools'15)*, 2015.
- M. Eslamimehr, M. Lesani**, AtomChase: Directed Search Towards Atomicity Violations**. *In Proceedings of the 26th IEEE International Symposium on Software Reliability Engineering (ISSRE'15)*, 2015. (**Won the best paper award**)
- H. Samimi, A. Warth, M. Eslamimehr, A. Borning, **Constraints as a Design Pattern: from Sketchpad61 to Sketchpad14**. *In Proceedings of ACM SIGPLAN International Symposium on New Ideas, New Paradigms, and*

*Reflections on Programming & Software (Onward!'15)*, 2015**.**

- M. Eslamimehr, J. Palsberg, **Sherlock: Scalable Deadlock Detection for Concurrent Programs**. *In Proceedings of the 22nd ACM SIGSOFT International Symposium on the Foundations of Software Engineering* (*FSE'14*)*, 2014***.**
- M. Eslamimehr, J. Palsberg, **Race Directed Scheduling of Concurrent Programs**. *In Proceedings of the ACM SIGPLAN Annual Symposium on Principles and Practice of Parallel Programming (PPOPP'14)*, 2014.
- M. Eslamimehr, J. Palsberg, **Testing versus static analysis of maximum stack size**. *In Proceedings of the 37th IEEE International Conference on Computers, Software & Applications (COMPSAC'13)*, 2013.

## WORKSHOP PAPERS & OTHER PUBLICATIONS

- A. Warth, T. Garnock-Jones, M. Eslamimehr **Recognizing and Generating Terms using Derivatives of Parsing Expression Grammars**. *In Proceedings of Arxiv.org*, CoRR abs/1801.10490, 2018.
- Mahdi Eslamimehr, Hesam Samimi, *Timing Analysis of Event-Driven Programs with Directed Testing*, *In Proceedings of WCET'15, 15th International Workshop on Worst-Case Execution Time Analysis, a satellite workshop of the 27th Euromicro Conference on Real-Time Systems (ECRTS 2015),* 2015*.*

## POSTERS AND DEMONSTRATIONS
- *Directed Scheduling of Concurrent Programs*, UCLA Tech Forum, Jan 2014.
- *Enhancing Components Configuration Language on SPARTA*, Samsung US R&D, San Jose, 2010.
- *Scalable Topology Language for Many-Core Processors*, Samsung US R&D, San Jose, 2010.

## INVITED TALKS

- *Event-Based Directed Testing*, Howard Hughes Lab, Malibu, 2013
- *Directed Testing: From FPGAs to Supercomputers*, Intel, Seattle,2012.
- *Model-Based Testing: State of Art*, Ericsson AB, Helsinki, Finland, 2008.

## PATENT APPLICATIONS

- Patent Case No. UC-2014-323-1-LA. Serial No. 61/904,977, Mahdi Eslamimehr, Jens Palsberg, **Race Directed Scheduling of Concurrent Programs**, filed November 15, 2013.

## MEMBERSHIP

| | |
|---|---|
| **California Arbitration (Founding Member)** | **Nov 2022 -Present** |
| **Harvard Business Review (Los Angeles Chapter)** | **Aug 2022 -Present** |
| **Los Angeles County Bar Association (LACBA)** | **Aug 2021 -Present** |

## HONORS AND AWARDS

- **Open Science Data Cloud PIRE National Science Foundation Scholarship**, 2013.
- **UCLA Graduate Division Fellowship,** 2009-2011.

## TEACHING

- **Lecturer**, Software Engineering, CalPoy Pomona, Fall 2014.
- **Lecturer**, Object-Oriented Design Pattern, Calpoy Pomona, Spring 2014, Winter 2014, Fall 2013.
- **Lecturer**, Industrial Computation, Calpoy Pomona, Spring 2014, Winter 2014, Fall 2013.
- **Teaching Assistant**, Java Applications, UCLA Math Department, Winter 2013.

- **Teaching Assistant**, Compiler Construction, UCLA Computer Science Department, Fall 2012, Fall 2011.
- **Teaching Assistant**, Introduction to Computer Science, UCLA Computer Science Department, Winter 2010.
- **Teaching Assistant**, Software Engineering, Linkoping Computer Science Department, Fall 2007.
- **Teaching Assistant,** Data Structure and Algorithm, Linkoping Computer Science Department, Fall 2007.
- **Teaching Assistant,** Human-Computer Interaction, Linkoping Computer Science Department, Fall 2007.

RESEARCH COMMUNITY SERVICE

- Reviewer for the **Software: Practice and Experience (SPE)**, 2015.

- Reviewer for **IEEE Transactions on Software Engineering (TSE)**, 2015.
- Reviewer for the **5th International Conference on Computer and Communication Technology (ICCCT)**, India, 2015.
- AEC Program Committee Member for the 42nd **ACM SIGPLAN-SIGACT Symposium on Principles of Programming Languages (POPL),** 2015.
- AEC Program Committee Member for the 20th **ACM SIGPLAN Symposium on Principles and Practice of Parallel Programming (PPOPP),** 2015.
- AEC Program Committee Member for the **ACM SIGPLAN Symposium on Code Generation and Optimization (CGO),** 2015.
- AEC Program Committee Member for the 36th **ACM SIGPLAN Conference on Programming Language Design and Implementation (PLDI),** 2015.
- AEC Program Committee Member for the 28th **European Conference on Object-Oriented Programming (ECOOP)**, 2014.
- AEC Program Committee Member for the **ACM SIGPLAN Conference on Object-Oriented Programming, Systems, Language and Applications (OOPSLA)**, 2014.